Good morning, Your Honors. If I could have three minutes for rebuttal, please. I'm Josephine DeLorenzo on behalf of defendant Dan McGinnis. I thought this case was interesting until that case, so. But I think the bottom line here is that under either approach set forth in O'Connor, the search at issue here did not violate the Fourth Amendment, either because Mr. Lange didn't have a reasonable expectation of privacy or because it was just a reasonable search to retrieve work-related materials. The reason he had no reasonable expectation of privacy is because he brought his external hard drive to work, he connected it to his work computer, and thus the city's network, and then he stored work files on his hard drive. There's also in the record, I would say, evidence that he was storing his personal files that were on his own hard drive. They were also on the work network. Now, he denies that in his affidavit, but if you look at what he said in his deposition testimony, I think it's fair to say. Let me ask you this question. When this device was found, this is the equivalent of a thumb drive, right? I'm not exactly sure of the size. I think it might be a little bit bigger. But where was it? It was in the office someplace? It was in his office connected to his computer. So it was connected at that point by a cable to the city's computer, right? Yes. Was it open? Was it running? Well, my understanding from reading the record is that he had been gone from his job for a while, but he had left everything, you know, he just left his office and everything was there. So McGinnis' testimony is that he... So here's the reason that I'm asking, and this may not ultimately make any difference, but you keep saying it was connected. There's a wire that goes from the hard drive to the laptop or the PC. I understand that, but it was not on the network. It was not connected to the network itself in terms of it running at the time that somebody came in, was it? I guess I'm not sure how to answer that. My understanding is just that McGinnis went in, he sat down at the computer, turned it on, and then when you're on your computer, you can access the different drives. And so since this drive was connected to the computer, he could see what was on it. So he had to turn on the computer, and then he had to click on the icon to go to the C drive or whatever it was in order to be able to access something that was stored on that external storage device, right? So if this was the equivalent of a file cabinet, the file cabinet would have been in the office, he would have had to go to the file cabinet, open the folders, and pull out the folders that he wanted to look at, right? Yes. Now if it had been a personal file cabinet, even though it had a folder in it that appeared to be city information, would he have had the opportunity to look at all of the other folders in that file cabinet merely because there was one folder of the city's? Well, I guess the most analogous facts were in that Gosmeier case. I'm not asking you analogous facts in another case, I'm just asking for the city's position. Well, he would then be able to look at all the other file folders in the traditional file cabinet situation. I believe so, because if he knew that there was work-related materials in there, he would have to go through them all to find out which was work and which was personal. I guess in your example, maybe he only knows that there's one folder, and he went in to just get that one folder. He would still have to look through to find it. So then your next position would have to be, he could take all the folders out of the file drawer, take them down to the janitor, and ask that they all be incinerated. That was the example that the district court, or the position the district court took. As far as, the deleting of the file. I'm asking you if the city would have been justified in destroying all the personal property in my hypothetical file cabinet, because there were folders in there that appeared to have city material. I guess I think it might be different if it's a paper file as opposed to electronic. Well, that's why I'm trying to figure out. The only, the reason you say it's the same is because it was connected. But it wasn't like this was up and running and readily accessible. Well, I think it's somewhat different. It utilized the network to download work files to this hard drive, apparently, right? Yes. Didn't use the network to get all the personal property on that hard drive, because you can't download that using the network, because it was put the personal stuff on it, photographs or whatever they were, when he took the hard drive home. I believe that the personal files were also on the network. I know that the other side disagrees, so I'm just, but I'm basing my statement on his deposition testimony. And I can give you a page ID number. It's page ID 519. And they had been asking him, okay, who knows that you had work materials on this hard drive? And then they ask him, who knows that you had personal items? And he said that everybody knew that I had my personal documents by the mere fact that I told them that it, meaning the hard drive, would back up everything off my main computer. They knew it was backing up some personal items as well. So to me, and I mean, I know we have to go by what the plaintiff says, so that's... It doesn't mean it was backing it up off of the city's network. He apparently used it to back up the stuff at home as well. Isn't that what that means? I guess you could maybe interpret it that way. The reason that I'm asking you these questions is it seems to me this whole business about being able to look at all the city files, excuse me, the personal files, or as the alternative, simply destroy all the personal files, is a lot closer question than you might seem to think that it is. And I'm wondering if the easier way to look at this was whether it was clearly established what the city was entitled to do in connection with this mixed city personal stuff on an external hard drive, for which, as far as I know, we have no cases. Well, I would definitely agree that at the very least, he's entitled to qualified immunity, because O'Connor didn't set forth a rule regarding the actual seizure part, and I believe that in Judge Keith's opinion in James, he pointed that out. In James, you also said, well, we're not going to decide the seizure issue either, because we've decided that the search was illegal, so hence the seizure is illegal. So there's no... The judge relied on O'Connor and relied on James. Are there any other cases that you're aware of that address even an analogous situation? As far as deleting files, a situation just like this, where McGinnis sat down, he looked at the list, and it appeared to be majority... He actually thought they were all work files. And so instead of going through each one, he just deleted it to return the actual hard drive. I didn't see a case like that. I mean, the closest I could come to was the file cabinet, and the seizure issue was actually raised in there, but I don't believe that the court addressed it. It just said that there was no reasonable expectation of privacy, because she brought this personal file cabinet, even though she kept it locked. She had work materials in it. You're talking James. Pardon me? Talking James. Oh, no, no. I was talking the Gassmeyer. I'm sorry. Gassmeyer is the Seventh Circuit case. That's the one I think is the most analogous. But yes, there isn't a rule. There isn't a rule as far as the seizure is. And also, I would argue that it's also not clearly established just for the search. And if it is, I think it's more on our side that it was reasonable, because they knew that there were work related materials there. In addition to Judge McKeek's point about the lack of clearly established law, and obviously we can hear if there is such law, as to these sorts of devices, you know, as opposed to filing cabinets. It seems like this case is better analyzed under sort of a seizure rubric rather than search. I mean, the destruction of seizure, that's not a search, right? Okay. Does that matter in terms of the legal analysis? Well, I would argue that it was reasonable under the circumstances, because there were, well, when you look at the file list, I believe it was 967 files. Now, I didn't realize that some of those were folders. A couple of them were folders, and they contained hundreds of photographs. So it might be more double to that. It might be more like 1,700 or 1,800 files. So I think it was reasonable under the circumstances for him to just wipe it, because he's a public employee. The city of Benton Harbor is under an emergency financial manager. Is he going to go through and look at each and every document and make a judgment on whether it was personal or work? I understand that practical argument, but in terms of the law, applicable standards, or the cases that are out there, does the distinction here between search, which there probably was to some extent, but seizure, does that matter in our analysis? Well, it's still Fourth Amendment, so I would say it still has to be reasonable for my explanation that I just gave. And also, I guess I would go back to the clearly established. Because the workplace cases don't really get into seizure, they're within a rule. So there's not a clearly established rule for him to know if that was okay or not, but I would just say for reasonable practical purposes. But let's assume that there was another kind of an object in that office. I'm searching for what would be a good analogy, and this might not be a good one. Let's say there's a gun in the office. This guy was the police chief, right? They're not sure whether it's his own personal gun or whether it's the city's gun, so they destroy it. Would that be legitimate? I guess I don't know why they would destroy it. Well, they don't know why they destroyed all the personal folders either, so that doesn't help us. I guess, well, I would say they destroyed the personal folders because they had to give him back the device they were on. I mean, I guess it's this distinction between the device versus the files that are on it. But he wanted his device returned, and so they returned it, but they just had to take off the work files. So instead of making the distinction, they just wiped it clean, which I think for the practical reasons I just stated as far as the gun, I mean, I guess maybe not a good example because you'd be able to tell whose gun it was. And so maybe it would be wrong if they knew it was his and they just destroyed it because that was a lot easier to just hand back to him. They knew some of the folders were his too, didn't they? McGinnis's testimony is that he just saw the list and they appeared to be the majority work. Now, maybe, I mean, he was... He didn't testify that he identified them all as city property. No. He thought that it was... Majority. The proper approach was to destroy city property. He said he knew that there were personal items on there and he didn't want to take the time to separate them out. Right. So we have, what, this expediency exception now you're advocating for the Fourth Amendment? Well, I would say in this situation because he brought this device and you can keep thousands of documents on it and he put work materials and yeah, you would have to... Because he could name something a work file or he can name something a personal file and it could actually be a work file. You're not going to know until you look at those. And I guess I would say I'm not generally advocating for expediency in the Fourth Amendment, but even the Supreme Court said the employee may avoid exposing personal belongings at work by simply leaving them at home. So, I mean, that's the guidance we get from the Supreme Court. And then otherwise we find ourselves in a situation like this. So, I'm sorry. All right. Thank you. You'll have your rebuttal. May it please the Court, John Burkhans for the Plaintiff Ampli. Let me address Judge McKee's question, the first question. This was an external hard drive belonging to Roger Lang, which he hooked up to a docking station, which then was hooked up to the computer owned by the city, which was assigned to him, was a laptop. The device itself was not part of any of the network of the city. In fact, the testimony was that McGinnis had to go to Lang's computer in order to access that hard drive. And according to the acceptable use policy by the city... Does it matter that when he left it there, he didn't disconnect it? Seems to me your argument is better if it wasn't physically connected, so all you had to do was... If it was physically connected and put in a personal file cabinet, that would be, you know, the best scenario for us, but... But when you say it's not networked, again, it depends on how you define... When you say it's not part of the network, it just depends on how you define that. I'm defining network as computers connected to one another. And so if he went to his computer... Computers are nothing but hard drives and processors. Correct. This happened to be an external hard drive. External. External to the network. Well, that's because you're using those words. It wasn't external to the network any more than the PC was external to the network. They're all connected together when they're wired together. They may be password protected, maybe they're not. That's true. And according to the use policy, they were password protected. In other words, according to, and let me cite this, page ID 417, all user passwords are strictly confidential in order to ensure individual accountability for system usage, security, and integrity. Employees shall only log in in the system using their own password. So McGinnis couldn't even get into the office computer of Lange without an IT guy or using his password, and those passwords are confidential so that anybody who's using it can't blame pornography being on his computer because someone else used his office computer. You would agree that the employer had a legitimate interest in wanting to remove work files from this hard drive before they returned to it? They would certainly have. I think Judge Scalia and the plurality in O'Connor talked about that. So the answer is yes? The answer is yes, but my point is that McGinnis testified that he didn't know there were any city documents on that external hard drive until he got into the external hard drive. Because he can't just hand it back without removing the documents, right? Well, once he got in there and invaded the privacy, he knows. As Judge McKeek points out, your client made it a part of the network, so there's a possibility that there are work documents that he should not be able to take out of the workplace, and they had to go in there to one way or another remove them. I guess you're complaining about the two things. One is the invasiveness of the search, and then the second part goes to that part of the O'Connor test. There's no invasive search here at all. There actually wasn't a search. Your complaint is you wanted them to go through and separate these out. It seems to me that's a search. What you're complaining about is not a search. It's a seizure. They were destroyed. That's certainly part of our argument. There was a search and destroy. I mean, it was a search of the external hard drive, and then once they found that there were personal files there, McGinnis did test them. You can't possibly say that they were not entitled to look to see what was on the hard drive, are you? Well, I'm just referring to the testimony. Don't leave it there, or don't hook it up to the computer. That's pretty simple. He created the problem. But for him hooking it up there, it wouldn't have been searched by the city. He created the problem. My only point... Are you saying that they were not entitled to look on his work computer to see what was on that external hard drive that was connected to the work computer? Based upon the test in O'Connor, where you have to have a reasonable suspicion that there are work-related documents on the personal device... He had told his colleagues that he was backing up the city's files. I understand that, Judge. But the only point I'm making is that from McGinnis' perspective, and I think that's where we have to look at this, he testified that he had no idea that there were city documents on the hard drive until he got into the hard drive. If he was a police officer, any knowledge that the other police officers had would be attributed to him, right? That's one way to look at it, yes. So why wouldn't that be true with respect to this administrator? I just don't understand how you can say they didn't even have the right to look to see if there was city material on the hard drive. That makes no sense to me. What they do once they discover that there are city files on the hard drive, that's a separate question. So really what we're talking about here, it seems to me, is the remedy. What were they supposed to do? And what you're complaining about is their remedy was to just wipe it all out. Correct. It's like... If this device was actually backing up his home computer as well... This seems like a giant waste of everybody's time, frankly, between people that are unhappy that they got fired from the city. I mean, I understand if you've got an employment claim in this race discrimination or something like that, I get that. But here, was the information of a personal nature that was on this hard drive also on his PC at home? I don't know if it was at his PC at home. It was not on his PC at work. I got that. So it was only on this external hard drive. If this... He couldn't have gotten the personal stuff on there through the city computer. You agree with that? Right. So he had to have gotten it on this hard drive through his personal computer at home. Right, and he took the device home every night. Now, if all of this stuff that's on this hard drive is also on the PC, what on earth are you claiming is the damages from destroying what essentially is the backup of these photographs? Well, there's nothing on the record to indicate that he also has personal items on his home computer. The only evidence that we have is that it's on this external device. Is he claiming that things were destroyed, that he's lost forever? He's claiming that his personal items were destroyed. The backup of them, or the originals of them, or what? Or don't you know? The record doesn't say if this is the only copy of his personal items. You're his lawyer, right? You want to go to trial. What are you going to say are his damages here? His damages are the loss of all of his photos, 899 items. Maybe they're not lost. Are they on his home computer? They're not on his home computer, but I'm just trying to address the record. You're telling me they're not? Correct. So these are irretrievably lost? These are the only copies that he has. Okay, I got that. That answers the question. Now, let's get to the heart of this. Do you have anything better than O'Connor and James to rely upon to say that this remedy, assuming that it was not a very good remedy that the city chose when they found there were personal files and work files on this external hard drive, violated his constitutional rights? Yes, we have those cases that deal with a seizure. And if you look at... Just tell me what case... Judge Bell only relied upon O'Connor and James as I read his opinion. He talked to some extent about the actual seizure of the items, i.e. the destruction. Tell me what your best cases are to say that the law was clearly established that they couldn't do what they did. The James v. Hampton case. Ortega, I think, is pretty darn close to what we have. Ortega, was that the Tenth Circuit case you're citing? Which one now? O'Connor v. Ortega. Where'd that come from? That's a U.S. Supreme Court case. Oh, okay. That involved computers? It did not. It was 87. I mean, you really have a problem here. Your brief has a paragraph or two at the end that deals with the clearly established thing. I mean, that's a big deal in qualified immunity. I understand. And it seems like we've got a handful of cases that are at a very high level of generality, have nothing to do with computers from the 80s, filing cabinets, whatever. You know, this case, the city was presented with a problem. It was a problem of your client's creation. They tried to figure out the best way to do it. They did what they did. The question is, was there, you know, a Supreme Court case, Sixth Circuit case, that made clear they couldn't do what they did? And I mean, just to build on Judge McKeague's question, you know, if O'Connor and James don't make it clear that you can't delete the files on a hard drive as an alternative to more invasively going through them, what cases do you have that would speak with the kind of specificity that the Supreme Court, sometimes in reversing us, has said the cases have to speak with? We don't have a deletion of personal files on a hard drive type of case, but I think those are so closely analogous that that's why we rely on them so heavily. All right. And I think they're sufficient, quite frankly. I mean, the more egregious the violation, the more general the case can become, I think, to meet this test of a clearly established law. Let me ask you this question. Let's say there's a filing cabinet. Somebody's been terminated. Department goes in there. They're going through the cabinets. Most of the stuff is work stuff. They open one, and it's got work stuff intermingled with very personal stuff that they just don't want to have anything to do with. And so rather than, and they're not even folders. It's all just sheets of paper mixed together. Rather than go through it all, they just incinerate it. Is there a case that says that is, so they don't look at, apart from just like, whoa, I don't want to get into this. There's like letters to somebody they shouldn't be writing letters to. I don't want to get into this. And they go over, and they just dump it, incinerate it. Is there anything that says that kind of seizure is not permissible? If I understand your hypothetical correctly, an official from the city, in this case, a deputy director of the police department, finds personal items. He knows the personal items, but he's not going through them page by page. A cabinet that belongs to the person. They brought it in, but they've put work stuff in there, which city's entitled to take out. Is too lazy or careless to go through there. No, it's not lazy or careless. They don't, this stuff is so personal and sensitive, and it looks like, you know, just copies or something. Fair enough. Then we destroy it. Burn it. So it's. There's no case on that, and there's probably a good reason, because it's pretty audacious. In fact, that's the word used by Judge Bell in this case, to go ahead and take all of the personal items, and in essence. But we don't have a seizure case sort of in the physical world that would parallel this. Not that I've been able to find, or. Well, you know, you're relying upon. It's your fault. I don't think it's okay. You're relying upon Ortega, which is, which I've been referring to as O'Connor, and that's speaking about whether there's a reasonable expectation of privacy. That's the search. It's not the seizure, I think. So let's talk just for a second about. This is not a case where, like, Dr. Ortega had stuff in a desk and in a file cabinet. He had it on a hard drive that was physically connected via a wire to the city's computer, and he told his colleagues that he was backing up city files on that hard drive. So I'm trying to figure out why does he have an expectation of privacy that society would consider to be reasonable under the 14th Amendment to say that nobody can then look to see what's on that hard drive? Why would we consider that to be reasonable? Well, Appellant talked about the policy, and the policy talks about a city network. My argument is that it's not part of the network. It's sort of a dead end, a storage device that you can't access, except through the office computer with a password. Well, he didn't have a privacy interest in the city computer on his desk, did he? Not, well, no. Not on the city issue. So you open up that computer, whether it had a password or not, there's no reasonable expectation of privacy that somebody has on the city computer itself. This just happens to be a storage device that's off to the side as opposed to inside the CPU. I say it's off to the side so much that it is separate, because you've got the city computer, you have city drives, then you have the hard drive. You're speaking to the chair of our IT committee, just so you know. I've been listening for several hours, and I'm up against it, I can tell. If he had disconnected this hard drive and it was just sitting in a desk drawer or something like that, I would at least understand your argument. But when he chooses to leave it there, and he chooses to hook it up, and he doesn't otherwise protect the hard drive itself, so that once somebody is on the network, it doesn't really matter whether they click hard drive A, B, C, or D, or network drive A, B, C, or D, or cloud, or whatever, you have ready access to it. I'm just trying to find out, from a threshold standpoint, why you have a reasonable expectation of privacy in determining whether the city information on that hard drive. Understood. What's the answer to the question? The answer is that the hard drive is not part of that city computer. It's one step removed from it, is what I'm saying, because it's not part of those city drives. It's something that is unique to that particular hard drive. And the hard drive, as everybody knew, was personal. The device itself was personal. So if I can make an analogy, you've got a briefcase full of work you're taking home, and a bunch of photos that are of a personal nature. Someone looks at the device. It is locked or unlocked. I say, in this case, it's locked, or the briefcase is locked. You open it up, and then you destroy everything in it. All right. Thank you. Thank you. Ms. DiLorenzo, anything further? I would just reiterate that everything in my brief, that we believe the search and seizure were both reasonable, but that if you're not going to go that way, he's definitely entitled to qualified immunity, because the only cases we have are James and O'Connor, and they didn't even address the seizure issue. So I would just end with that, unless you have any other questions. I think we're set. Thank you. Appreciate your arguments. The case will be submitted.